UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE WEDGE LAZZOTTI,<br><br>   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>   Defendant. | Case No.: 1:13-cv-1329-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Yvonne Wedge Lazzotti ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

**FACTS AND PRIOR PROCEEDINGS**

On January 7, 2011, Plaintiff filed her current application for disability insurance benefits beginning June 2, 2008. AR 12.[2] Plaintiff's application was denied initially and on reconsideration. AR 44, 54. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Trevor Skarda held a hearing on March 22, 2012, and issued an order denying benefits on April 16, 2012. AR 12-19. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on March 22, 2012, in Stockton, California. AR 24-41. Plaintiff appeared and testified. AR 24. She was represented by attorney Jeffrey Duarte. AR 24. Impartial Vocational Expert ("VE") Stephen Schmidt also testified. AR 24.

Plaintiff primarily alleges disability due to elbow tendonitis and carpal tunnel syndrome. AR 152. She reported that these conditions resulted in arm and hand pain, numbness, and weakness. AR 33-34.

Plaintiff last worked in 2008 as a customer service representative at an emergency roadside assistance company. AR 30. Her position required her to "type word for word" customer needs so that an appropriate emergency vehicle could be dispatched to the customer's location. AR 29. Plaintiff stopped working at that position due to pain in her hands. Plaintiff filed a workers' compensation claim and her employer sent her to a clinic for testing. AR 31. Her doctor diagnosed carpal tunnel and tendonitis in both arms. AR 31. Plaintiff left her position and had a carpal tunnel and tendonitis release surgery performed on her right arm the next day. Plaintiff's right arm surgery was only mildly successful and as a result she decided against having another surgery on her left arm. AR 32.

In 2009, Plaintiff switched physicians and began seeing Dr. Amsden, a pain management physician, as a part of her workers' compensation claim. AR 32. Plaintiff continued to see Dr. Amsden, her treating physician, consistently from 2009 to the hearing date. AR 33. Dr. Amsden

---

[2]   References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

prescribed Plaintiff a TENS unit, injections, and pain medication. AR 33. Plaintiff testified that the injections help momentarily but her pain eventually returns. AR 33. Plaintiff described her pain as "a sharp shooting pain going up my forearm to my elbow and an electric shock feeling." AR 33. Plaintiff also testified that her hands fall asleep. AR 33.

When asked about her daily activities, Plaintiff testified that she performs household chores, but she frequently needs to stop to take breaks because her arms swell or her hands fall asleep. AR 36. The pain from her hands and arms also causes her to lose focus, making it difficult for her to concentrate. Plaintiff testified that she also gets her son to help her lift heavy objects and help her around the house. Plaintiff frequently drops things and has weak grip strength so her son helps her with cooking and stirring things. AR 34. After performing regular activities for more than just a short period of time, Plaintiff testified that she experiences swelling in her arms as well as throbbing pain. AR 35.

The ALJ questioned Plaintiff about Dr. Amsden's sitting limitation, as her condition was not synonymous with a sitting limitation. Plaintiff explained that she has trouble sitting for extended periods of time because elevating her arms on an arm rest causes tingling in her arms and her hands fall asleep. AR 36. When asked about her additional impairments, Plaintiff testified that she also suffers from sleep apnea. AR 36. Plaintiff testified that her sleep apnea is seeing improvement since her doctor prescribed a CPAP machine and she had bariatric surgery to help with her sleep issues. AR 37.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Stephen Schmidt. AR 38. The VE testified that Plaintiff's past jobs were best classified as receiver, dispatcher, and day worker. AR 38. The ALJ asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and work history. AR 38. In his first hypothetical, the ALJ asked the VE to consider an individual who could complete the full range of light work with no additional limitations. The VE testified that individual could perform Plaintiff's past jobs as performed. AR 38.

In a second hypothetical, the ALJ asked the VE to consider the same individual, but the individual is additionally limited to frequent bilateral handling and fingering. The VE stated that the hypothetical individual could not perform Plaintiff's past relevant jobs, but would be able to perform

3

the representative job of "information clerk, DOT 237.367-018, light." AR 38. If that same individual was instead limited to occasional bilateral handling and fingering, that individual would not be able to perform any jobs as they exist in the national economy.

In a third hypothetical, the ALJ asked the VE to consider an individual who is limited to light work with occasional handling and fingering with the right upper extremity, and "frequent handling and fingering with the left." AR 39. The VE stated that the hypothetical individual could perform the representative job of "information clerk." AR 39.

In a final hypothetical, the ALJ asked the VE to consider an individual who can walk/stand for no more than 30 minutes at a time and can sit for one hour. In an eight-hour work day, this individual is able to sit for six hours and stand and walk for four hours, and may need a sit/stand option, allowing her to sit or stand alternatively as long as the total amount of sitting does not exceed six hours. The individual would need unscheduled breaks every two hours for five to ten minutes; the individual could occasionally lift less than five pounds, never lift 10 or more pounds. The individual is also limited to occasional twisting, stooping, crouching, and climbing ladders and stairs. The individual can grasp for six percent or less each day. The individual would also miss work more than four days a month. The VE testified that a person with such limitations would not be able to perform any jobs as they exist in the national economy. AR 40.

**Medical Record**

The entire medical record was reviewed by the Court. AR 216-745. The medical evidence, summarized here, will also be referenced below as necessary to this Court's decision.

The record documents Plaintiff first receiving treatment for bilateral wrist and forearm pain on July 30, 2007. AR 228-229. At that time, Plaintiff exhibited minimal wrist swelling, tenderness to palpation of the wrists, negative Tinel and Phalen signs, and intact motor strength and sensation. AR 229. Plaintiff received hand/arm treatment from Robert Santos, M.D. on a monthly basis for the remainder of 2007. AR 222-227. In August 2007, Dr. Santos noted that Plaintiff was improving overall, with slightly reduced range of motion in the right forearm, and positive Tinel's sign in both wrists. AR 226-227. By November 2007, he noted that Plaintiff was 55% improved after 3.5 months of conservative treatment. AR 223. Plaintiff exhibited normal range of motion, but maintained

positive Tinel's sign bilaterally. AR 223. In December 2007, Plaintiff reported that her wrist tendonitis was "much improved." AR 222.

In January 2008, Plaintiff transferred treatment to Joshua Richards, M.D. AR 218-219, 221. Dr. Richards observed full range of motion in Plaintiff's elbows, wrists and fingers, with minimal tenderness with palpation to her wrists. AR 218-219, 308, 310. He also noted that Plaintiff's motor strength and sensation were intact. AR 308. Nevertheless, Plaintiff continued to describe sharp pain in her elbow consistent with tennis elbow (also known as lateral epicondylitis). AR 310. Accordingly, on June 11, 2008, Dr. Richards operated on Plaintiff's right elbow, performing a right lateral epicondylitis debridement and repair. AR 342. Post-surgery, Plaintiff initially improved, denying numbness, but reporting elbow tenderness. AR 292, 295, 297. As of December 2008, Plaintiff's active range of motion in her right upper extremity was within functional limits, and her strength was 70% of normal. AR 331. At that time, Plaintiff denied numbness or tingling in her right hand. AR 331.

In March and June 2009, Dr. Richards noted that Plaintiff had mildly restricted range of motion in her wrist, but normal range of motion in her thumb and fingers. AR 288. Examinations performed between September 2009 and April 2010 revealed residual tenderness over the right elbow, positive Tinel and Phalen signs, and generally intact sensation on finger stroke testing. AR 267, 270-271, 277, 280.

Plaintiff also began treatment with pain management specialist, Christopher Amsden, M.D., in February 2009. AR 353. The record documented Plaintiff's biweekly to monthly visits with Dr. Amsden from February 2009 through August 2011. AR 411, 743. Dr. Amsden regularly noted Plaintiff's complaints of hand, elbow, and forearm pain and weakness. AR 451, 580, 631, 733. On examination, Dr. Amsden frequently observed positive Tinel and Phalen signs, tenderness in Plaintiff's elbows, wrists and hands, grip weakness, and restricted range of motion. AR 423, 438, 451, 475, 495, 503, 636, 641, 645, 655, 667, 733, 743. To treat Plaintiff's pain, Dr. Amsden gave her several steroid injections in her elbow and wrists. AR 429, 447, 478, 500, 639. Dr. Amsden also treated Plaintiff with a TENS (Transcutaneous Electrical Nerve Stimulation) unit, which "significantly help[ed]" her pain. AR 503, 507.

In a January 2012 physical residual functional capacity questionnaire, Dr. Amsden opined that Plaintiff could sit for one hour and stand for 30 minutes at one time, and could sit a total of at least 6 hours and stand for a total of about 4 hours in an 8-hour workday. AR 681-682. Dr. Amsden further opined that Plaintiff could occasionally lift 5 pounds, occasionally perform postural activities, handle and finger 2-3% of a workday, and reach 5-6% of the workday. AR 682-683. He also assessed that Plaintiff would miss more than 4 days of work per month due to her medical condition. AR 683. Dr. Amsden reportedly based his assessment on EMG and Nerve Conduction Studies, as well as positive Tinel and Phalen signs. AR 680.

A qualified medical examiner, Leo Van Dolson, M.D., also evaluated Plaintiff's functional capacity in connection with her workers' compensation case. AR 491-492. On physical examination, Dr. Dolson observed positive Tinel's sign, but full range of motion in Plaintiff's shoulders, elbows, wrists, and fingers. AR 488. He further noted Plaintiff's grip strength of 16kg without pain, normal motor function in the upper extremities, and negative Phalen's sign. AR 488-489. Notably, Dr. Dolson found "good fluid movements of both upper extremities including the hands," and overall commented that Plaintiff's "[p]hysical exam [w]as objectively quite unremarkable." AR 488, 491. He also opined that Plaintiff appeared "hyperreactive" during the examination, and he was "quite skeptical" about Plaintiff's ongoing complaints. AR 491-492.

In March and June 2011, State agency physicians reviewed Plaintiff's medical record and provided opinions regarding her functional capacity. AR 43, 46-47, 55-56. The medical record contained EMG and nerve conduction testing from December 2007, March 2009, and March 2011. AR 230-232, 555, 561. In December 2007, EMG and nerve conduction studies were normal. AR 230-232. In March 2009, the EMG and nerve conduction studies revealed no obvious cervical radiculopathy or generalized polyneuropathy, and, at worst, borderline median neuropathy in the wrists. AR 561. EMG and nerve conduction studies performed in March 2011 revealed no obvious median neuropathy or carpal tunnel picture, no obvious nerve entrapment at the wrists or elbows, and no evidence of polyneuropathy (neither sensory nor motor). AR 555.

The State agency physicians noted examination results showing good range of motion in Plaintiff's upper extremities, improvement with the TENS unit, and normal EMG and nerve

conduction testing. AR 43, 55. Ultimately, the physicians opined that Plaintiff could perform light work. AR 46-47, 56.

Finally, the record documented that Plaintiff underwent gastric bypass surgery on December 7, 2011. AR 692-693.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12-19. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since June 2, 2008. AR 12. Further, the ALJ identified tendonitis of the elbow and carpal tunnel syndrome in the bilateral hands as severe impairments. AR 14. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 14.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, but with the additional limitations that Plaintiff is limited to occasional handling and fingering with the right upper extremity and frequent handling and fingering with the left upper extremity. AR 14. The ALJ found that Plaintiff could perform a significant number of jobs that exist in the national economy, including the representative job of information clerk. AR 18. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 18.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing

the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her opening brief, Plaintiff contends that the ALJ erred in evaluating (1) her treating physician evidence and (2) her subjective symptom testimony.

## **DISCUSSION**[3]

**1. The ALJ Properly Discounted Plaintiff's Treating Physician**

Plaintiff first challenges the ALJ's disability finding for failing to provide sufficient reasons for rejecting the opinion of her treating physician, Christopher Amsden, M.D. (Doc. 14 at 5). Plaintiff specifically alleges that the ALJ should have given Dr. Amsden's opinion greater weight because Dr. Amsden treated Plaintiff frequently and consistently over the course of three years. According to Plaintiff, Dr. Amsden's records were detailed and referred to the length of his treatment with Plaintiff,

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

8

his personal observation of her symptoms, and review of other medical and diagnostic evidence in the case.

### A. Dr. Amsden

Plaintiff sought treatment with Dr. Amsden in connection with her workers' compensation claim beginning in February 9, 2009. In his initial treatment report of Plaintiff dated February 9, 2009, Dr. Amsden detailed Plaintiff's medical history, which included her pain in the wrists and hands. Dr. Amsden noted that although Plaintiff had surgery on her right elbow and carpal tunnel area her symptoms returned and she began to experience shooting pain in her forearm bilaterally and in her elbow. AR 563.

Plaintiff argues that over the course of treatment with Dr. Amsden he provided consistent treatment reports which documented Plaintiff's symptoms, and treatment. He continued to issue additional reports monthly over the next three years. AR 552 – 669. Dr. Amsden diagnosed Plaintiff with bilateral Complex Regional Pain Syndrome, ulnar neuritis, ulnar cubital tunnel syndrome, and tennis elbow. AR 563-566. Plaintiff received pain prescriptions and injections throughout treatment with Dr. Amsden.

The ALJ summarized Dr. Amsden's opinions as follows:

> The claimant's treating physician. Dr. Amsden prepared a Physical Residual Functional Capacity Questionnaire dated January 26, 2012. Dr. Amsden acknowledged the claimant's subjective responses in terms of amount of activity the claimant could perform was the basis of the findings in the functional evaluation.
>
> Dr. Amsden diagnosed the claimant with carpal tunnel syndrome, tennis elbow, ulnar cubital syndrome, and wrist pain. Dr. Amsden acknowledged the claimant could sit at least 6 hours in an 8-hour work day; while being able to stand /walk about 4 hours in an 8-hour work day. Dr. Amsden opined the claimant could lift and carry less than 5 pounds on an occasional basis; never lift or carry less than 5 pounds on an occasional basis; never lift or carry weight over 10 pounds; with significant limitations with reaching, handling, or fingering and limited in terms of postural activities being able to twist, stoop (bend), crouch/squat, climb ladders and stairs on an occasional basis.
>
> Dr. Amsden indicated emotional factors contribute to the severity of her symptoms and functional limitations; yet he did not identify any psychological conditions affecting her physical condition. He also indicated her experience of pain or other symptoms is occasionally severe enough to interfere with attention and concentration needed to perform even simple work tasks.
>
> Dr. Amsden's opinion is given reduced weight as it is not supported by objective findings; is quite conclusory, providing very little detail as to the evidence relied on in

forming this opinion; appears to be largely based upon the claimant's subjective complaints and is inconsistent with the other substantial evidence of record as a whole.

AR 16.

### B. Agency Physicians

State reviewing physicians, Drs. Bell and Wong reviewed Plaintiff's medical records and completed a case analysis. The ALJ summarized the reviewing physicians' findings as follows.

> A Physical Residual Functional Capacity Assessment and a Case Analysis were completed by a State agency medical consultant on March 17, 2011. The State agency medical consultant determined the claimant was capable of a light residual functional capacity including being able to sit, stand, and/or walk about 6 hours each out of an 8-hour workday; while being able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. Further, Dr. Bell found no postural, manipulative, visual, communicative, or environmental limitations were established.
>
> Upon reconsideration another Case Analysis was completed by a State Agency medical consultant. Dr. Wong reviewed the medical evidence in the file and adopted the earlier finding of a light RFC with no other limitations or restrictions.
>
> The State agency medical consultants' assessments are given great weight as they are based upon review and evaluation of the medical evidence of record, supported by objective findings and consistent with the record as a whole.

AR 17.

### C. Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v.*

*Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

### D.     The ALJ Correctly Weighed the Medical Evidence

Plaintiff argues the ALJ did not attach appropriate weight to the opinion of her treating physician considering she treated with him consistently over three years. (Doc. 14 at 6-7). The Court disagrees. The ALJ reviewed the entire medical record, and reasonably gave the greatest weight to the opinions of Drs. Bell and Wong, who relied on the findings, in part, of qualified medical examiner Dr. Lee Dolson. These three independent physicians' opinions were consistent with the medical record, which showed conservative treatment with mild or moderate objective findings. AR 230-232, 555, 561.

Although Plaintiff argues that Dr. Amsden's opinion was entitled to more weight because Dr. Amsden treated Plaintiff for three years in connection with her workers' compensation claim; the

11

length of the treatment relationship is one of many factors an ALJ may consider when weighing a treating medical source opinion. AR 680. While a treating medical source will generally receive greater weight because he or she is in the best position to obtain a longitudinal perspective of the claimant's impairments, *see* 20 C.F.R. § 404.1527(c)(2)(i), an ALJ may nevertheless discount such an opinion if it lacks sufficient support and is inconsistent with objective clinical evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(3),(4) (in weighing a medical source opinion, the ALJ will consider the explanation and medical evidence the doctor provides in support of his opinion, as well as the consistency of the opinion with other evidence in the record). Indeed, the Ninth Circuit has held that an ALJ need not accept a treating medical source opinion if it is "conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ provided specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician in favor of Plaintiff's reviewing physicians. First, the ALJ found that Dr. Amsden's opinion was conclusory and unsupported by objective findings. AR 17. Dr. Amsden's treatment notes generally reference Plaintiff's arm and hand function observed during physical examinations, but his findings are largely repetitive and parrot plaintiff's subjective complaints. AR 552-651. Based on Dr. Amsden's mild to moderate findings, Dr. Amsden recommended that Plaintiff return to semi-sedentary work. AR 643. However, Dr. Amsden's findings were at odds with the more detailed report of the qualified medical examiner, Leo Van Dolson, M.D. AR 488-492. Dr. Dolson examined Plaintiff and noted a full range of motion in Plaintiff's shoulders, elbows, wrists and fingers; grip strength of 16kg without pain, normal motor function in the upper extremities, and negative Phalen's sign. AR 488-489. Additionally, Dr. Dolson found "good fluid movements of both upper extremities including the hands," and overall commented that Plaintiff's "[p]hysical exam [w]as objectively quite unremarkable." AR 488, 491. The State agency physicians reviewed Dr. Dolson's findings and the EMG/nerve conduction studies, and opined that Plaintiff could perform the full range of light work. AR 43, 46-47, 55-56.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*,

12

278 F.3d 947, 957 (9th Cir. 2002). An ALJ may reject or discount a treating physician's opinion if the opinion was not based on objective medical evidence, inconsistent with the physician's own medical records, or dramatically more restrictive than the opinion of any other medical source. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Amsden's conclusory findings that Plaintiff could not perform even sedentary work was dramatically restrictive in light of the mild objective findings identified by Dr. Amsden and the reviewing physicians. For this reason, the ALJ was entitled to discount Dr. Amsden's opinion.

Second, the ALJ discounted Dr. Amsden's opinion because it was inconsistent with the objective medical records. AR 17. The ALJ noted that treatment records dated January 12, 2011, from Sutter Gould Medical showed the claimant was evaluated for an injury to her right thumb where Plaintiff "jammed the tip of her finger" causing her "acrylic nail" to "lift part of her fingernail off." AR 525. X-Rays from that examination were negative and Plaintiff failed to document any other complaints related to her hands or wrists. AR 17. The ALJ also noted an examination on March 7, 2011, "revealed nothing abnormal in the claimant's bilateral hands, upper, and lower arms." AR 518-520. Further, although a 2009 EMG and nerve conduction study showed borderline median sensory neuropathy, a subsequent 2011 EMG and nerve conduction study showed no evidence of median neuropathy or carpal tunnel dysfunction. AR 555, 561. The State agency physicians relied on the objective clinical evidence and found that Plaintiff was capable of performing light work. Because those findings were consistent with the foregoing evidence, they constituted substantial evidence supporting the ALJ's decision. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings). Thus, it was reasonable for the ALJ to favor the opinions of the State agency doctors over Dr. Amsden's treating opinion. AR 17. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("where the opinion of Plaintiff's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence; it is solely the province of the ALJ to resolve the conflict").

The ALJ also discounted Dr. Amsden's opinion because Dr. Amsden overly credited Plaintiff's subjective statements regarding pain and other symptoms. AR 17. As addressed in more detail below, the ALJ found that Plaintiff's complaints lacked credibility. An "ALJ may reject a treating physician's opinion that is based to a large extent on a claimant's own accounts of symptoms and limitations may be disregarded where those subjective complaints have been properly discounted by the ALJ. *See Tonapetyan,* 242 F.3d at 1149 ("ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (same). In this case, the ALJ found Plaintiff's testimony lacked credibility; accordingly, Dr. Amsden's opinion based on Plaintiff's unreliable complaints warranted less weight. AR 17.

Lastly, to the extent that Plaintiff argues that the ALJ failed to properly weigh the medical evidence because the ALJ did not account for her complaints of sleep apnea, Plaintiff's argument is unpersuasive. Plaintiff has failed to produce medical evidence demonstrating the existence of a sleep disorder persisting for a continuous period of at least 12 months. *See* SSR 82-52 (for a finding of disability, the claimant's impairment(s) must preclude him or her from engaging in substantial gainful activity for a continuous period of at least 12 months). A medically determinable impairment must be established by "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96-4p).

The record did not document medically acceptable clinical or laboratory findings establishing a sleep disorder, much less a sleep disorder lasting for at least 12 months. Indeed, Plaintiff reported that her sleep apnea was related to her obesity. Plaintiff testified that after she underwent gastric bypass surgery in December 2011, her weight decreased and her reported sleep apnea improved. AR 37, 692-693. Based on the foregoing, it was not error for the ALJ to disregard Plaintiff's complaints of sleep apnea.

In sum, the ALJ gave specific and legitimate reasons for rejecting Dr. Amsden's opinion and crediting it "reduced weight." AR 17. The ALJ properly resolved the conflict between the opinions of

14

Dr. Amsden and the reviewing physicians and he concluded Plaintiff could perform light work with certain limitations, which is consistent with the objective evidence. *See Andrews v. Shalala*, 53 F.3d at 1039 (holding that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources). Accordingly, the ALJ's finding in this regard is free of legal error and is supported by substantial evidence.

**2.    The ALJ Did Not Err in Discrediting Plaintiff's Subjective Symptom Complaints**

Second, Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding Plaintiff's subjective testimony not credible. In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

With respect to Plaintiff's credibility, the ALJ found that "[a]fter careful consideration of the evidence, I find that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." AR 16. The ALJ proffered three clear and convincing reasons for rejecting Plaintiff's impairment testimony. First, as discussed at length above, the record largely contains moderate to mild functional limitations, yet Plaintiff alleges that she is totally

incapacitated by her carpal tunnel and tennis elbow. The ALJ referenced the lack of diagnostic evidence corroborating the extent of Plaintiff's reported motor weakness and sensory loss; in particular, he noted that EMG and nerve conduction studies revealed no obvious evidence of such dysfunction. AR 16, 555, 561. Given the level of pain and dysfunction alleged by Plaintiff, it was reasonable for the ALJ to discount Plaintiff's subjective complaints based on the lack of corroborating evidence from the EMG or nerve conduction studies. AR 16.

Second, the ALJ noted Plaintiff's conservative treatment. AR 15. The ALJ noted that in Plaintiff's Adult Disability Report, she alleged "tendonitis and carpal tunnel syndrome in both arms and hands as the impairments that caused her to be unable to work beginning on June 2, 2008." AR 15. Plaintiff "indicated receiving treatment from 4 medical sources, however 3 out of the 4 rendered treatment on a limited basis and none of these sources provided treatment after 2009. The claimant also denied seeing a medical source for any medical condition and the medications she listed were all noted to be for no specific purpose." AR 15. Evidence of conservative treatment may diminish a Plaintiff's credibility and is sufficient reason to discount a claimant's testimony regarding the severity of impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Finally, the ALJ noted that Plaintiff acknowledged "having no problems with personal care and reported being able to perform a wide range of activities of daily living including: taking care of her child; occasionally preparing meals; occasionally doing laundry and cleaning; going outside unattended by either driving or riding in a car; shopping; handling money; and attending her son's football games." AR 15. The ALJ also noted that while Plaintiff reports problems with lifting and using her hands and completing tasks; she admitted "being able to finish what she starts and having no difficulties with following written or spoken instructions." AR 15. An ALJ may consider inconsistencies between a claimant's activities and his subjective complaints. *See Tonapetyan*, 242 F.3d at 1148.

The ALJ's credibility findings with respect to Plaintiff's subjective symptom testimony were explained and supported. Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is

supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). By considering Plaintiff's inconsistent statements, her robust physical activities, and the objective medical evidence the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas*, 278 F.3d at 959. Therefore, Plaintiff's challenge on this ground fails.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Yvonne Wedge Lazzotti.

IT IS SO ORDERED.

   Dated:   **March 11, 2015**                      /s/ *Barbara A. McAuliffe*
                                                 UNITED STATES MAGISTRATE JUDGE